McBRIDE, Judge.
The question before the court is whether the American Creosote Works, Inc., owes occupational license taxes to the State of Louisiana for the- years 1952 and 1953 in the sum of $900, together with interest and penalties thereon. The Collector of Revenue determined that said corporation was engaged in the business of retail dealer selling in large quantities to certain consumers within the meaning of LSA-R.S. 47:353.1 and levied against it a license tax for said years in said amount. Feeling aggrieved, the corporation took an appeal, *246 under LSA-R.S. 47:1433, to the Board of Tax Appeals, which body maintained the Collector’s ruling and entered judgment against the corporation for the tax. Pursuant to LSA-R.S. 47:1434, the corporation, by means of the instant proceedings instituted in the Civil District Court for the Parish of Orleans, sought a judicial review of the decision of the Board, and after a hearing of the matter, the court affirmed the judgment of the Board of Tax Appeals and rendered an appropriate judgment. American Creosote Works, Inc., now appeals from said judgment.
Counsel for both parties are in accord, and we also agree, that a decision in the case must hinge on the meaning to be accorded to the term “retail dealer” which the Legislature did not see fit to define in the Occupational License Tax Law. If the appellant is not selling its products at retail, it owes no license taxes and must be declared to be exempt therefrom as a manufacturer.-
American Creosote Works, Inc., manufactures creosoted lumber, piling, telephone poles, crossties, fence posts, etc., which it sells principally upon competitive bids and upon the purchasers’ specifications to building and construction contractors, governmental agencies (both state and federal), including the Louisiana Department of Highways, United States Engineers, Board of Commissioners of the Port of New Orleans, levee boards, etc. Whatever it sells to customers for resale constitutes but a negligible part of the business. The general office of the corporation is maintained at 1305 Government Street, New Orleans, where it receives most of its orders, and these are filled from its plant situated in the Parish of Jefferson.
Plaintiff seeks to have the assessment of the tax for said years set aside on the ground that it is not liable for an occupational license tax because (1) it is not a retailer within the intendment of the statute, but is a manufacturer and sells only in large quantities principally to federal and state agencies; (2) it rarely has a stockpile or inventory and cuts timber and processes it into creosoted piling, etc., only on sealed competitive bids and on specifications of the purchasers; (3) a large portion of its sales are made in interstate commerce; (4) it has no fixed place of business at which its customers make their purchases; and (5) inspectors for the purchasers check the processing to be sure the product meets-specifications.
The pertinent statutory law involved in-the case is found in Chapter 3, “Occupational License Tax,” LSA-Revised Statutes of 1950, and may be set forth as follows:
LSA-R.S. 47:341. “Imposition of tax
“In addition to all other license and excise taxes imposed in other chapters-of this Title or in other laws, there is hereby levied an annual license tax upon each person pursuing any trade, profession, vocation, calling or business in this state subject to license under Section 8 of Article X of the Constitution of 1921, which annual license tax shall be classified and graded as set out in the following Sections of this Chapter.”
LSA-R.S. 47:351. 'Wholesale dealers in merchandise
% ‡ % ‡
“B. A ‘wholesale dealer’ for the purpose of this Chapter, except as-otherwise specifically provided in this. Chapter, means any person who sells, to other dealers who in turn resell.”'
LSA-R.S. 47:353. "Retail dealers
“For every business of selling merchandise * * * at retail * * *
the license shall be based on the gross sales. * *
LSA-R.S. 47:353.1. "Retail dealers selling in large quantities to certain consumers
*247 “For every business of selling at retail in large quantities from a fixed place of business, feed or fertilizer to dairy men and cattle men or farmers, or feed, fertilizer, or other merchandise to federal, state, parish or municipal governments, or institutions, or to hospitals, educational or charitable institutions, or to manufacturers, public utility companies, processors, refiners, fabricators, contractors, severers of natural resources, railroads, pipe lines, steamship companies, hotels and restaurants, the license shall be based on gross annual sales. The amount of this license shall be as shown in the following table:”
LSA-R.S. 47:396. "Exemptions * * *
“E. Mamifacturers. Manufacturers shall be exempted from any provisions of this Chapter, provided that manufacturers who sell their manufactured articles at retail shall be subject to the payment of a license tax on such retail sales as fixed by this Chapter, S]? íjc }>
In rendering judgment, the trial judge handed down well-considered reasons therefor, which have our approval, in which he fully discussed the issues raised and set forth his conclusions as to the facts and the law applicable, and we adopt the following quoted portion thereof as part of our opinion in the case:
“Plaintiff admittedly is a manufacturer, and was so held to be in State v. American Creosote Works, 163 La. 547 [112 So. 412], and, as such, would be exempt, except for the fact that it sells its manufactured articles at retail under [LSA-]R.S. 47:396[E], * * *
‡ ‡ Jjí í{t ÍJÍ
[LSA-]R.S. 47:353.1, covers retail dealers selling in large quantities to certain consumers, * * *
* * ❖ * * *
“Plaintiff contends this section refers to farm products and fertilizer only, but a casual reading shows the phrase ‘or other merchandise’, and this includes merchandise of any class or specification, without restriction. Webster defines ‘merchandise’ to mean ‘objects of commerce; wares, goods.’ To give this section the interpretation plaintiff contends, would in effect result in the deletion of the phrase ‘or other merchandise’ from the text, and have the statute contemplate the sale of large quantities of cattle feeds and fertilizer to hospitals, charitable and educational institutions, refineries, fabricators and contractors. What need these would have for large quantities of cattle feed and fertilizers is hard to contemplate.
“It is immaterial whether a dealer sells in wholesale or small lots, and whether he manufacturers his merchandise or acquires it otherwise, he is subject to an occupational license tax if he sells directly to a consumer or a user, and not to a customer for resale.
“[LSA-]R.S. 47:351(B) limits the meaning of a ‘sale at wholesale’ to a sale to a purchaser who buys to resell. While the statute does not itself define a ‘retail sale’, it must follow the definition given to a wholesaler.
“In State v. J. Watts Kearny & Sons, 181 La. 554, [160 So. 77], and State v. Owin, 191 La. 617, [186 So. 46], it was held that sales of building materials to .contractors, municipalities and public boards, and to the general public, were not sales to dealers for resale, but sales to consumers, and held retail license tax was due. Those cases interpreted Act 205 of 1924 (Sec. 7), reading:
“ ‘That for every wholesale dealer in merchandise, not otherwise provided for by this Act or by special laws, whether the business be conducted at a fixed establishment or otherwise * * * the license shall be fixed and *248 graded in classes * * * as follows * * */
“Transactions by which railroad cross-ties, seasoned in Missouri, and creosoted in taxpayer’s Illinois plant, and delivered to railroad in Illinois, pursuant to contracts made in Illinois, were ‘sales at retail’. Department of Revenue v. Jennison-Wright Corp., 393 Ill. 401, 66 N.E.2d 395.
“The controlling factor in the classification of a sale as a ‘wholesale’ or ‘retail sale’ is the disposition of the goods made by the buyer, and not the character of the business of seller or buyer. Palmer v. Perkins, 119 Colo. 533, 205 P.2d 785.
“ ‘Retail sale’ means sale to consumer, rather than to dealers or merchants for resale. Stolze Lumber Co. v. Stratton, 386 Ill. 334, 54 N.E.2d 554.
"Sales of cloth, fabrics, thread, buttons, and packaging materials to laundries and cleaners were taxable as ‘retail sales’. Carpenter v. Carman Distributing Co., 111 Colo. 566, 144 P. 2d 770.
"Plaintiff cites lexicographers Webster and Bouvier, and decisions from other states, interpreting their own statutes, to the effect that to sell at retail is ‘to sell in small quantities directly to the consumer, who purchases to satisfy his own personal wants or those of his family or friends, through the personal use of the commodity or service purchased.’
“Here we are dealing with, and interpreting, our own license statute, and under [LSA-JC.C. Art. 17, laws in pari materia, or upon the same subject matter, must be construed witth reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another. In reviewing our laws in pari materia we find:
“[LSA-JR.S. 3:522(5), the ‘Farm Product Marketing Facilities Law’, reading:
“ ‘ “Retailer” means a person other than a farmer who engages primarily in the selling of farm or food products directly to consumers.’
“[LSA-]R.S. 51.421(D) ‘Unfair Sales Law’, we find this definition:
“ ‘ “Sell at retail,” “sales at retail,” and "retail sale” mean any transfer for a valuable consideration, made in the ordinary course of trade or usual prosecution of the seller’s business, of title to tangible movable property to the purchaser for consumption or use other than resale, * * *.’
“[L.S.A.-]R.S. 47:301(10) ‘Sales Tax Láw’, provides:
“ ‘ “Retail sale,” or “sale at retail,” means a sale to a consumer or to any person for any purpose other than for resale * * *.’
“From these laws in pari ma-teria we must formulate the definition that a ‘retail sale’ is any sale by one regularly engaged in the business of selling to customers who buy for their consumption or use, and not for resale to others.
“Plaintiff contends it has no fixed place of business, but admits it maintains an office and place of business at 1305 Government Street in New Orleans, where it receives and fills its orders.
“Plaintiff’s contention that it manufactures the creosote piling only after its sealed bid is accepted, and only upon specifications dictated by the purchaser, is equally untenable, because the test is not how and why its merchandise is created, but how it is disposed of after creation. A merchant tailor is none the less a retailer because he *249 makes a suit for a customer only after the customer selects the material, and is measured for a fit to suit his own body and fancy.
“That considerable of plaintiff’s business is done in interstate commerce was not raised or passed upon before the Board of Tax Appeals, and the record does not disclose whether or not such interstate business was included in the tax assessment. In the absence of plea or proof, to the contrary, the presumption is that the Board of Tax Appeals made the proper computation on taxable business.
“From the evidence and the applicable statute, it is clear that plaintiff is selling its products at retail, and is subject to an occupational license tax as a retail dealer. However, as plaintiff sells its products in large quantities to the classes of purchasers named in [LSA-]R.S. 47:353.1, and has a fixed place of business at 1305 Government St. in New Orleans, and as [LSA-] R.S. 47:353.1 applies to the sale of all types of merchandise, the decision and judgment of the Board of Tax Appeals, maintaining the assessment of an occupational license tax against plaintiff, is correct * *
For the above reasons, the judgment appealed from is affirmed.
Affirmed.